**United States District Court**
**District of Massachusetts**

| | | |
|---|---|---|
| **Catherine Ware,**<br>**Plaintiff,**<br>**v.**<br>**CleanChoice Energy, Inc.,**<br>**Defendant.** | ) | **Civil Action No. 25-13623-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff, Catherine Ware ("plaintiff" or "Ware"), brings this putative class action on behalf of herself and other similarly situated Massachusetts customers of CleanChoice Energy, Inc. ("defendant" or "CleanChoice"). CleanChoice is an independent energy service company ("ESCO") that purchases electricity from producers at wholesale prices and resells it to customers at a profit.

The complaint asserts four claims in three counts. Count I is for breach of contract and breach of the implied covenant of good faith and fair dealing based on the allegations that CleanChoice improperly priced its energy services. Counts II and III assert claims of unfair and deceptive practices under M.G.L. c. 93A and unjust enrichment, respectively, based upon

alleged improper pricing and a claim that CleanChoice improperly sourced its energy.

Relevant to this opinion, this session of the Court also presides over a nearly identical case, Sommer v. CleanChoice Energy, Inc., 800 F. Supp. 3d 239 (D. Mass. 2025) ("Sommer"), reconsideration denied, 833 F. Supp. 3d 25 (D. Mass. 2026). In Sommer, the Court held that, while the plaintiff failed to assert viable claims based on the alleged improper pricing practices of CleanChoice, he did assert valid claims concerning CleanChoice's sourcing of energy. The ruling dismissed Count I (breach of contract and implied covenant of good faith and fair dealing) in full and narrowed Counts II and III to improper sourcing claims.

In this context, CleanChoice moves to dismiss the complaint in this case as well. As it did in Sommer, CleanChoice argues that the three counts fail to state claims, and that furthermore, this case is duplicative of Sommer and should be dismissed or stayed pending the resolution of Sommer.

This Court referred CleanChoice's motion to dismiss to Magistrate Judge Donald L. Cabell ("Magistrate Judge Cabell"). Magistrate Judge Cabell issued a report and recommendation ("R&R") recommending dismissal of Count I in full, dismissal of Counts II and III insofar as they rely on alleged improper

pricing, and a stay of Counts II and III with respect to Ware's sourcing claims pending resolution of the Sommer case.

For the reasons set forth herein, the Court will accept and adopt the R&R.

## I. **Analysis**

The decision of Magistrate Judge Cabell rests on the conclusion that this case is duplicative of Sommer. Two federal actions are duplicative when they involve the same parties and similar subject matters and "the overlap between the two suits is nearly complete." Maldonado-Cabrera v. Anglero-Alfaro, 26 F.4th 523, 526 (1st Cir. 2022) (quoting TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996)). When the overlap between cases is less than complete, however,

> judgment is made case by case . . . based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.

TPM Holdings, 91 F.3d at 4 (citation omitted).

Here, Magistrate Judge Cabell concludes that there is a "near[] complete overlap" between this case and Sommer based on the fact that the complaints in both cases were filed by the same attorney, name CleanChoice, rather than another ESCO, as defendant, allege the same improper pricing and energy-sourcing conduct, assert the same four causes of action in three counts,

and seek class treatment for all Massachusetts CleanChoice customers from the earliest allowable date through judgment.

Plaintiff concedes the stated similarities but challenges the Magistrate Judge's conclusion on the grounds that the pricing claim here materially differs from the one in Sommer. Specifically, Ware asserts that the claim in Sommer concerning variable pricing by CleanChoice was predicated on language in advertising materials mailed to the plaintiff for enrollment, whereas the claim here is predicated on language in the agreement mailed to Ware after she enrolled.

In Sommer, this Court considered whether CleanChoice breached its contract with the plaintiff based on language in the "enrollment terms sheet"; i.e., the disclosure of terms of service included with the enrollment materials sent to the plaintiff. That document stated:

> . . . variable supply rate may vary each month and is based on a number of costs which may include, but are not limited to: energy, transmission, capacity, ancillary services, renewable energy certificates, RTO system fees and other factors, plus CleanChoice Energy operating costs, expenses, and margins. This list of factors is not exhaustive and no single factor will determine the rate.

Based on that language, this Court concluded that CleanChoice had not breached its contract or the implied covenant of good faith and fair dealing with the plaintiff because the enrollment terms sheet unambiguously gave

CleanChoice discretion to set its variable supply rate. See Sommer, 800 F. Supp. 3d at 245.

Ware contends that her claim does not overlap because this Court did not explicitly address the post-enrollment contractual materials, which contain language different from the enrollment terms sheet. Of relevance, Section 7 of the "MA Residential and Small Commercial Contract" ("MRSCC") sent to Ware after she enrolled provides:

> [a]fter the end of the Initial Term, this Agreement will automatically renew on a month-to-month basis at a price per kWh that may vary monthly depending on market conditions.

Based on that language, Ware contends that CleanChoice based its rates on factors beyond "market conditions" and that, because her claim relies on Section 7 of the MRSCC rather than the enrollment terms sheet, her pricing claim is not duplicative of the claim in Sommer.

Although it is true that Ware relies on different contractual language than the plaintiff in Sommer, her contention is erroneous. First, although Section 7 of the MRSCC differs from the language analyzed in Sommer, the plain language of the MRSCC incorporates the enrollment terms sheet into the Agreement between the parties. Section 3 defines "Agreement" as

> this Disclosure Statement (including these General Terms of Service, Product Summary, and Online Privacy Policy), as well as your Enrollment Authorization, and any amendments to these documents from time to time.

Section 19 of the MRSCC likewise provides:

> This Disclosure Statement (including these General Terms, Product Summary, Product Label, Privacy Policy, and the web Terms of Service) along with your enrollment authorization or renewal letter constitutes your entire agreement between you and CleanChoice Energy with regard to your purchase of electric generation and other related services from CleanChoice Energy. This Agreement supersedes all prior agreements between us, either written or oral.

Ware contends that the MRSCC supersedes the enrollment terms sheet but she reaches that conclusion by quoting only the second sentence of Section 19 and omitting the first. The first sentence defines the "entire agreement" as including the "enrollment authorization." Reading the provision as a whole, the second sentence cannot be read to contradict the first, especially when it refers to the enrollment authorization, which includes the enrollment terms sheet. See Dahua Tech. USA, Inc. v. Zhang, 138 F.4th 1, 12 (1st Cir. 2025) ("courts must avoid isolating words and interpreting them as though they stood alone, and instead construe the disputed provision considering the contract as a whole" (internal citations and quotations omitted)). The enrollment authorization form indicates that, in signing, the enrollee has "review[ed] and accept[ed] the enclosed terms and conditions," and it is undisputed that the enrollment terms sheet was among the documents enclosed with the enrollment forms.

Because the enrollment terms sheet is incorporated into the MRSCC, the terms at issue in Sommer and in this case are part of the same integrated agreement. Thus, the agreement at issue in Sommer is the same agreement at issue here, and the pricing claims in both cases are substantively identical, regardless of whether the plaintiffs rely on different provisions of the agreement to advance their claims.

Ware alternatively contends that, even if the enrollment terms sheet is incorporated into the Agreement, the reference to "market conditions" in Section 7 creates ambiguity as to the factors CleanChoice may consider in setting its rates. The Court disagrees. As discussed above, the enrollment terms sheet expressly provides that the "list of factors" on which CleanChoice may base its prices "is not exhaustive" and that "no single factor will determine" the rate. The reference to "market conditions" in Section 7 is therefore not inconsistent with, nor materially different from, the broader pricing discretion conferred by the enrollment terms sheet.

Reading the agreement as a whole, "market conditions" is readily encompassed within the non-exhaustive list of factors CleanChoice may consider in setting its rates. Moreover, nothing in Section 7 purports to limit CleanChoice's pricing discretion to market conditions alone and Ware identifies no contractual language suggesting otherwise. Accordingly, this

Court agrees with Magistrate Judge Cabell that there is a substantial, near-complete overlap between this case and Sommer.

Having concluded that the cases are duplicative, the question remains as to how to resolve Ware's claims. As Magistrate Judge Cabell noted, when two federal cases are duplicative,

> the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer.

TPM Holdings, 91 F.3d at 1. Because this session of the Court presides over both cases, however, Magistrate Judge Cabell concludes that the most reasonable course is to dismiss Count I, dismiss the portions of Counts II and III based on improper-pricing claims and stay the remainder of this case pending resolution of Sommer, rather than to consolidate the cases. See Cherelli v. InStore Grp., LLC, 513 F. Supp. 3d 187, 193 (D. Mass. 2021) (explaining that avoiding duplicative litigation is "particularly salient where the two actions are pending before the same judge").

The Court agrees with Magistrate Judge Cabell that dismissal of the claims advanced by Ware challenging CleanChoice's pricing practices promotes the principles of avoiding wasting judicial resources through "piecemeal litigation" as well as the risk of conflicting judgments. TPM Holdings, 91 F.3d at 4. See Elliott-Lewis v. Lab'ys, 378 F.

Supp. 3d 67, 70 (D. Mass. 2019)(dismissing duplicative claim in second lawsuit where that claim "would be precluded by a final judgment in the first lawsuit").

Such principles apply notwithstanding that both cases are putative class actions. See Cherelli, 513 F. Supp. 3d at 193 (dismissing a second putative class action as duplicative where the cases involved the same facts, allegations, putative class, and, after amendment, named plaintiffs). Meanwhile, staying rather than dismissing the remainder of this case is the proper course because it preserves Ware's sourcing claims in the event this Court denies class certification in Sommer.

Finally, the Court construes the R&R as not reaching the merits of Ware's sourcing claims. Accordingly, CleanChoice's objection to the R&R "insofar as it can be construed" as a ruling on the merits of the sourcing claims is moot.

**ORDER**

For the foregoing reasons, plaintiff's objections (Docket No. 32) to the Report and Recommendation of Magistrate Judge Cabell are overruled and that Report and Recommendation (Docket No. 30) is **accepted and adopted.**

Count I of plaintiff's complaint is dismissed in full, Counts II and III are dismissed to the extent they are based on allegations of improper pricing but permitted to proceed to the extent they are based on allegations of improper sourcing, and

the remainder of this case is stayed pending the resolution of Sommer v. CleanChoice Energy, Inc., 800 F. Supp. 3d 239 (D. Mass. 2025), reconsideration denied, 833 F. Supp. 3d 25 (D. Mass. 2026).

**So ordered.**

Nathaniel M. Gorton
Nathaniel M. Gorton
Senior United States District Judge

Dated September 22, 2026